The **AMERICAN INSURANCE COMPANY OF NEWARK, NEW JERSEY,** a Corporation, Plaintiff,

v.

**NORTH SIDE METAL, Inc.,** a Corporation, **Harry Brown and Ellis Brown,** doing business as North Side Metal Company, **Peter Peat, H. Keith Cady,** Administrator of the Estate of Caroline N. Cady, Deceased, **Ward A. Harding,** Administrator of the Estate of Florence M. Harding, Deceased, and **Karen Lou Mulvaney,** Defendants.

**Civ. A. No. P–2004.**

United States District Court
S. D. Illinois, N. D.
May 19, 1958.

MERCER, District Judge.

Plaintiff filed its complaint for declaratory judgment and evidence has been heard. The evidence discloses that plaintiff is a New Jersey corporation and defendants are residents of the State of Illinois, and the amount in controversy is in excess of Three Thousand Dollars.

The defendant, North Side Metal, Inc., purchased a 1955 Ford Dump Truck on July 30, 1955 from Dana Huddleson Ford Company, Champaign, Illinois, and owned said vehicle on January 3, 1957. Thereafter, on April 27, 1956, plaintiff issued its policy of insurance to North Side Metal, Inc., for a period of one year, the said policy being admitted into evidence as Plaintiff's Exhibit A. This policy schedules the motor vehicles insured under the terms of said policy but the 1955 Ford dump truck was not scheduled. Thereafter, on June 14, 1956, plaintiff issued its policy to Harry Brown and Ellis Brown, doing business as North Side Metal Company, for a period of one year, said policy being admitted into evidence as Plaintiff's Exhibit D. This policy schedules certain vehicles but the 1955 Ford dump truck was not scheduled.

On January 3, 1957, the defendant, Peter Peat, was employed by North Side Metal, Inc., and while acting in the scope of his employment was operating the 1955 Ford dump truck upon Route 150, approximately twelve miles east of Peoria, Illinois, about 7:30 o'clock A.M., when said motor vehicle collided with a motor vehicle operated by the defendant, Karen Lou Mulvaney, and occupied by Caroline N. Cady, deceased, and Florence M. Harding, deceased. As a result of said collision the defendant, Karen Lou Mulvaney, was injured and she and the defendant administrators have made claims for the personal injuries and wrongful deaths.

As a result of the above occurrence, the defendants, North Side Metal, Inc., Harry Brown and Ellis Brown, doing business as North Side Metal Company, and Peter Peat, have demanded protection, defense in the event of litigation, and payment of any settlement or judgment

William Voelker, Jr., Heyl, Royster & Voelker, Peoria, Ill., for plaintiff.

Swain, Johnson, Gard & Cation, Robert H. Miller, Morgan, Pendarvis & Morgan, Jay J. Alloy, O'Hern, Alloy, O'Hern & Wombacher, Peoria, Ill., for defendants.

which may be rendered against defendants under the policies heretofore described. Plaintiff has denied liability under either policy and seeks a summary judgment declaring the rights of the parties under the policies of insurance.

The defendants contend that it had relied upon plaintiff company and its agents, in consideration of defendants' payment of premiums and promise to pay any premiums which might be required to be paid, to insure defendants as against any bodily injury liability, or property damage liability, or any other liability which might arise. Defendants further contend that defendants were covered as to all the vehicles owned by the defendants and that the policy (Exhibit D) was, in fact, the type of policy known and designated as a "fleet" policy covering any and all vehicles owned by the defendant, North Side Metal, Inc.

The principal question to be determined therefore, is whether or not the policy issued June 14, 1956, being Exhibit D, was a fleet policy. This policy is designated as a comprehensive automobile policy. A schedule of automobiles is attached to the policy listing four vehicles, none of which is the 1955 Ford dump truck involved in the accident. Attached to the policy is a change of automobile endorsement dated December 21, 1956 wherein a 1957 Ford Fairlane is added and a 1955 Ford Fairlane, one of the four vehicles listed in the original schedule, is eliminated. Coverages A and B of the insuring agreements provide for bodily injury liability and property damage liability "caused by accident and arising out of the ownership, maintenance, or use of any automobile."

Paragraph 2 of Conditions provides as follows:

"The Company shall be permitted to inspect the insured automobiles and to examine and audit the insureds' books and records at any time during the policy period and any extension thereof and with three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance."

The above-quoted Coverages A and B and Paragraph 2 of Conditions are quoted for the reason that defendants rely on the language contained therein as establishing proof that the policy is a "fleet" policy.

The evidence discloses that the plaintiff company started to do business with defendant on June 14, 1951 when the first policy, similar to the one in question herein, was issued. Renewals were made each year. The 1955 Ford dump truck was purchased July 30, 1955, approximately eleven and one-half months prior to the renewal date of June 14, 1956.

There is considerable conflict in the testimony on the question of verbal notice given by defendants to the local agents of the plaintiff. Campbell Evans was the local agent of plaintiff company, doing business in Champaign, Illinois. He handled the business in connection with the comprehensive liability policy referred to as the fleet policy, Exhibit D. H. R. Breese & Company, also a Champaign, Illinois agent of the plaintiff company, handled the business in connection with the policy, Exhibit A. Defendants testified that oral notice was given to Evans that the 1955 Ford dump truck was to be included in the fleet policy. This is denied by Evans. In resolving the question of the credibility of the conflicting testimony, the Court is impressed with evidence introduced as Plaintiff's Exhibits B, C, H, and I. These exhibits disclose that on October 23, 1956, approximately two months before the accident above referred to, North Side Metal Co., Inc., by Ellis Brown, Manager, wrote a letter to Evans and a letter to Breese & Company, the letters being identical and reading as follows:

"We are preparing an insurance register and in order to complete this we would appreciate your sending us a list of policies currently in force, giving the policy number, company, dates, premium, property covered and loss clause if known, and what, if any balance may be due."

Both Campbell K. Evans and Breese & Company answered these letters two days later on October 25, 1956. Full information was given and in answer to the inquiry as to property covered, the same vehicles were listed as are listed in the respective policies. In the Evans reply letter concerning the "fleet" policy is the following:

"They will be up for renewal June 14, 1957. If any of the above four items are not to be on the policy please advise and we will have them taken off, and likewise if there is any other vehicle to be added let us know and we will put them on."

These letters tend to corroborate Evans' testimony denying that he had notice to include the 1955 Ford dump truck. The reply letter of Mr. Evans was notice to Brown that the 1955 Ford dump truck was not included. Brown took no action to have the Ford truck included, although some action was taken to add one automobile and to eliminate one automobile on December 21, 1956 in the change of automobile endorsement above referred to. This was done approximately two months after the reply letter of Evans was received and twelve days before the date of the accident. It does not appear to the Court that Brown acted as a reasonably prudent business man should act in his failure, after notice, to take affirmative action in having the 1955 Ford dump truck added to the so-called fleet policy.

 No citation of authority is needed to support the proposition that in the absence of a provision for the extension of coverage of an automobile liability or indemnity to automobiles other than those described in the policy, the insurer does not cover the insureds' liability resulting from the use of such other automobile. In recent years certain provisions have been included into automobile liability and indemnity policies intending to provide coverage, under specified conditions, for vehicles not described in the policy without the necessity of first securing the insurer's ap-

proval to the change or addition. The provisions are known as the replacement provision and the blanket or fleet provision and are generally found in the so-called "automatic insurance" clause under which coverage is extended automatically to newly acquired automobiles. The "blanket" or "fleet" provision deals with vehicles added to the already insured vehicles. The "automatic insurance" clause requires notice of the acquisition of a new automobile to be given the insurer within a specified time after delivery, the period generally being either ten or thirty days. An examination of the policy involved herein, which defendants contend is a fleet policy, does not disclose any automatic insurance clause and for this reason the Court is of the opinion that said policy can not be designated as a "fleet" policy. The quoted part of the policy above set forth does not enlarge the policy covering certain scheduled vehicles into a fleet policy. The fact that Paragraph 2 of Conditions provides for inspection, examination and audit, does not make the policy a fleet policy but refers only to scheduled vehicles. Another circumstance that negatives the claim that the policy involved is a fleet policy is the fact that other vehicles owned by the defendants were insured under a different policy, the one heretofore referred to.

 The plaintiff also claims no liability for the reason there is a disparity of names of the insureds, the policy having been issued to Harry Brown and Ellis Brown, doing business as North Side Metal Co., but this contention is without merit. The plaintiff company knew, or should have known, the legal status of the defendants and any disparity of names would not invalidate the policies.

It is the opinion of the Court that the issues herein be found in favor of the plaintiff and against the defendants. An Order consistent with these findings of fact and conclusions of law shall be prepared and presented to the Court. It is further Ordered that a preliminary injunction restraining defendants from in-

stituting any action at law to recover damages on account of the occurrence of January 3, 1957, be and the same is hereby dissolved.